STATE OF NORTH DAKOTA, EX REL. ARTHUR HAGEN-
   DORF, et al., v. ALFRED BLAISDELL, as Secretary of State
   of the State of North Dakota.

(127 N. W. 720.)

**Constitutional Law — Original Writ — Seasonable Application — Court
   will not Act Summarily except in Urgency Cases.**

   1. This court will not decide grave constitutional questions, raised by original applications for writs which must be acted upon summarily, except in instances when the circumstances are such that a decision is imperative and the application could not readily have been made earlier.

**Elections — Primary Law — Its Purpose — Regulation of Party Nomina-
   tions.**

   2. Chap. 109, Laws 1907, known as the primary election law, is not intended to provide for and regulate the nomination of candidates who do not stand for or represent a political principle or party; it being intended only to regulate party nominations.

---

Note.—While some of the provisions in nearly all of the primary election laws, the validity of which has been tested in the courts, have been held void, the laws themselves have generally been upheld, though sometimes only after an amendment of the state Constitution, as shown by the note in 22 L.R.A.(N.S.) 1136, in which are reviewed all the cases in which the question of the validity of such laws has been passed upon by the courts.

**Primary Elections — Nominations by Petition.**

3. Section 501, Rev. Codes 1899, providing for nominations by petition, and the placing of the names of candidates so nominated upon the Australian ballot for use at the general election, is still in force, and provides a method whereby persons may be nominated as candidates for state and congressional offices as representing a collection of individuals too few in number to be entitled to a party ballot at the primary or a separate column on the ballot at the general election.

**Voters and Elections — Australian Ballot Law — Designation of Party — Statutory Provisions.**

4. Section 501, Rev. Codes 1899, supra, makes certain requirements of parties nominated by petition to entitle them to have their names placed upon the Australian ballot, and, among others, that the certificate of nomination or petition shall state in not more than five words the party or principle which the candidate represents. *Held* that this party designation should appear after the candidate's name as printed on the Australian ballot.

**Voters and Elections — Primary Law — Party Ballot.**

5. Neither chapter 109, Laws 1907, nor § 10 thereof, supra, which reads, "Any citizen otherwise eligible by law, affiliated with or representing the principles enumerated in the national platform of the following parties, are eligible to nomination under this act; the Republican, the Democratic party, or any party designation that cast 5 per cent of the votes cast for governor at the last general election, and it shall be unlawful for any person to call for or vote a ballot at the primary election herein provided for, except a ballot representing the party or principle with which he affiliates, . . ." is invalid as furnishing no method by which new parties may secure the printing of party ballots for use at the primary election, inasmuch as a party represented by candidates whose names have appeared in the individual column, followed by the party designation on the Australian ballot used at the general election and who have received 5 per cent of the votes cast for governor, is entitled to a separate ballot at the next primary election.

**Voters and Elections — Primary Law — Party Ballot — Authority of Legislature.**

6. *Held*, the legislature has, within reasonable limits, the power to determine how many voters acting together for the purpose of making nominations shall be entitled to a party ballot, and that the provision above quoted providing only for the printing of ballots for parties casting 5 per cent of the votes cast for governor at the next preceding general election is a reasonable regulation of an election held to make party nominations.

Opinion filed September 14, 1910.

Original application for a writ of Mandamus.
Application denied.
*Arthur Le Suer,* for relators.

SPALDING, J.   This is an original application in the name of the State on the relation of Arthur Hagendorf and other citizens of North Dakota, for the issuance by this court of its writ commanding the secretary of state to cause to be printed upon the official primary election ballot to be used at the primary election to be held throughout the state on the 29th of June, 1910, the names of the relators as candidates of the Socialist party for nomination to the several congressional and state offices, and directing the secretary of state to file the petitions of the relators, and print an official ballot of the Socialist party for such primary election.

Rule xxxix, requires a memorandum of authorities to accompany such application.   The relators have filed a memorandum brief, but it cites no authorities in support of their contention and in no manner aids the court in reaching a decision of the very important constitutional questions sought to be raised.   No one appeared in behalf of the respondent.   Under such circumstances this court would be amply justified in declining to consider the application, and particularly so in view of the fact that it was not brought to the attention of the court until three or four days before the date when the ballots for the primary election are required to be printed.   Other courts have refused to decide grave constitutional questions in a summary manner on applications of this nature when no excuse was shown for postponing the application until a day so late that it became impossible to give it that consideration and devote to the subject that research which such questions require, and which the court is entitled to have the opportunity to make except in rare and imperative instances.   Our first impression was that we would decline to issue the writ on this ground alone, but in view of the overwhelming weight of authorities against the position taken by the relators and the apparent soundness of the reasoning of the several courts which have passed upon these or analogous questions, we have concluded that we may as well settle it at this time on the merits.   We, however, deem it proper to call the attention of the bar to the propriety and the necessity of presenting applications which require the determination of questions of serious import, and particularly the construction of constitutional provisions, where nothing stands in the way of doing so, a sufficient length of time before a decision is necessary, so the court may fairly consider such

questions, and not be subject to the commission of grave error by reason of insufficient time in which to investigate and inform itself as to the principles governing and the authorities applicable to the same.

The legislative assembly in 1907 enacted a law providing for the nomination of party candidates for office in years when general elections are held by the people, in lieu of party caucuses and conventions. If we were to consider the object sought to be accomplished by the legislative assembly through such enactment, the reasons for our conclusions in the case at bar would be emphasized, but we deem it unnecessary to enter upon a discussion of the objects which the legislature sought to effect by the measure in question. They are well understood by the public. Much misapprehension and misconception of the primary election law is prevalent. The writer has heard it remarked many times that voters ought to have the privilege of voting for members of any party, or for members of no party, at the primary, and that votes cast for Democrats by Republicans ought to count toward the nomination of candidates of the Democrat party. All such ideas are beside the mark. The law is not intended to, and does not, provide for nonpartisan nominations. Its sole purpose is to provide for and regulate the nomination of candidates by political parties. Those who belong to no party or to parties not casting the percentage of votes necessary to bring them within the terms of the primary election law as parties, may proceed in another manner, as provided by statute, and their rights to become candidates, or to make nominations within their respective parties or political circles, are not infringed.

As we read the memorandum brief filed by the relators, we gather from it that it is sought to raise the question of the constitutionality of § 10 of the primary law, chapter 109, Laws of 1907, which reads: "Any citizen, otherwise eligible by law, affiliated with or representing the principles enumerated in the national platform of the following parties, are eligible to nomination under this act; the Republican, the Democratic party, or any party designation that cast 5 per cent of the votes cast for governor at the last general election, and it shall be unlawful for any person to call for or vote a ballot at the primary election herein provided for, except a ballot representing the party or principle with which he affiliates. . . ."

It is apparent that this section limits the application of the primary

20 N. D.—40.

law to those parties which cast 5 per cent of the votes cast for governor at the last general election next preceding the primaries. It is equally apparent that if any two or three people believing in certain principles in common might designate themselves as a political party, and thereby secure the printing at public expense of a ballot for their so-called party, there would be no end to party ballots in use at the primary elections, and that the effect would be to greatly increase the size of the Australian ballot at the general election, rendering it practically unintelligible to voters, and confusing rather than simplifying and regulating. It is eminently proper that some standard be fixed as to the number of voters who, under the law, shall be deemed to constitute a party and entitled to a party ballot. The legislature has, for the purpose of the primary election, determined that a 5 per cent vote is necessary to constitute a party worthy of recognition as such for the purpose of making party nominations. If this provision is invalid it would seem to follow by analogy that any provision requiring a fixed number of signers to a petition to place a person's name on the primary ballot, or to make an individual nomination and place the name of a candidate on the ballot at the general election, must also be invalid and that each voter in the state may, without the concurrence of other electors, secure the printing of his name upon a separate ballot.

The question must be looked at from a practical standpoint. It appears in the application before us that the Socialist party cast less than the required 5 per cent for any of its candidates at the last general election, and there is no claim that, if the provisions of § 10 under consideration are valid, their petition should be filed and a ballot printed as representing the Socialist party. It is urged that by the provisions of the primary law and of the Australian ballot law, which has a similar limitation, the formation of new parties is prevented, and that on the organization of a new party, regardless of the percentage of electors who compose it, it can never have a ballot representing such party at the primary or a separate party column on the ballot used at the general election. If this is correct we might be justified in holding the provision invalid, but we do not so construe the two laws. Section 501, Rev. Codes 1899, is still in force, and provides that candidates for public office may be nominated by means of a certificate of nomina-

tion containing the name of the candidate for the office to be filled, giving his postoffice address, the office for which he is named, and, in not more than five words, the party or principle which he represents, and must be signed by electors residing within the district or political division to a certain per cent of the votes cast therein, not in any case requiring more than 300 signatures. Such name then appears upon the Australian ballot used at the general election in the individual column, followed by the designation of the party to which he belongs. When nominations so made and printed upon the Australian ballot have been voted upon at the general election, and have received the necessary 5 per cent of the votes cast for governor, it follows that at the next primary the members of such party, on complying with the statute, are entitled to a party ballot. These provisions seem clear to us, and to provide a reasonable and simple method whereby the nominees of new parties may take advantage of the primary election, as parties, at the election after it appears that they come within the terms of the law as to the number of members. We conclude that the provisions of § 10, chapter 109, Laws of 1907, are not invalid for any of the reasons urged in the present instance. Similar provisions have been sustained where the ratio was fixed all the way from 1 to 10 per cent by other states. California is the only state in which we have been able to discover that a similar provision has been held invalid, and the reasons for so holding in that state are not altogether applicable in this state.

We are disposed to think that the provision might also be sustained on the ground that it is a reasonable classification of parties. It has been sustained for that reason in some states. But it is not necessary to enter upon a discussion from that standpoint. See People ex rel. Breckon v. Election Comrs. 5 A. & E. Ann. Cas. 565 and authorities cited in note; Note 4 A. & E. Ann. Cas. 144.

The application is denied. All concur.